UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRYAN DENMAN,                                    No. 2:11-cv-00310-TLN-JFM

        Plaintiff,

    v.                                                    <u>MEMORANDUM AND ORDER</u>

CITY OF TRACY,

        Defendant.

_____/

    This matter came before the Court upon the City of Tracy's ("Defendant") Motion to Dismiss.  (Def.'s Mot. to Dismiss, ECF No. 58.)   The Court has carefully considered the arguments presented in Bryan Denman's ("Plaintiff") Opposition to Defendant's Motion.  (Pl.'s Opp'n, ECF No. 61.)  For the reasons set forth below, the Court grants Defendant's motion to dismiss.[1]

### BACKGROUND

    In Plaintiff's Third Amended Complaint, he alleges that on or about August 31, 2010, a City of Tracy police officer pulled him over for a minor traffic infraction.  (Pl.'s Third Amended Complaint, ECF No. 33 at ¶ 6.)  Plaintiff consented to a search of his vehicle, during which the officer found a lug nut wrench underneath the driver's seat. (ECF No. 33 at ¶ 7.)  When asked about the wrench, Plaintiff stated that he did not know that it was under the seat because the vehicle belonged to his parents. (ECF No. 33 at ¶ 7.)  The officer admonished Plaintiff that he was in possession of a deadly weapon and subsequently arrested him on felony possession of a

---

[1]     This matter was submitted without oral argument on May 9, 2013.  (Minute Order, ECF No. 66); *see also* E.D. Cal. Local Rule 230(g).

1    deadly weapon. (ECF No. 33 at ¶ 7.)

2          Upon arriving at the police station, Plaintiff was kept handcuffed and placed in a chair

3    with his hands behind his back.  (ECF No. 33 at ¶ 9.)  One of the officers, who was introduced as

4    a sergeant, became enraged by Plaintiff's comments and rushed over to Plaintiff, grabbed him by

5    the neck, and violently threw him to the floor.  (ECF No. 33 at ¶ 9.)   During the altercation,

6    Plaintiff struck his head. (ECF No. 33 at ¶ 9.)  Several police officers proceeded to hold Plaintiff

7    down while one officer punched him.  (ECF No. 33 at ¶ 11.)  The officers then wrapped Plaintiff

8    in a restraint device, similar to a strait-jacket, and placed a hood or blindfold device over his

9    head, making it difficult for Plaintiff to breathe or see.  (ECF No. 33 at ¶ 12.)  Plaintiff also

10   alleges that the officers tightened his handcuffs to the point that they caused him extreme pain.

11   (ECF No. 33 at ¶ 12.)  Plaintiff claims that he has suffered injuries as a result of the incident

12   including post-concussive symptoms, bruising and red marks on his wrists, bruising on his back

13   and legs, a lump on his head, and a black eye.  (ECF No. 33 at ¶ 15.)

14         Following the incident, Plaintiff filed a complaint with the City of Tracy Police

15   Department.  (ECF No. 33  ¶ 22.)   In response, the Chief of Police sent Plaintiff a letter stating

16   that the Internal Affairs Department had conducted an investigation into his arrest on August 21,

17   2010, and that no violations of policy or law were found.  (ECF No. 33 at ¶ 22; Pl.'s Req. for

18   Judicial Notice, ECF No. 63, Exhibit 3.)  Plaintiff alleges there is a culture of tolerance within

19   the Tracy Police Department that is "rooted in the deliberate indifference of high ranking City

20   officials, individually and/or acting in concert with one another, who have routinely acquiesced

21   in the misconduct and otherwise failed to take necessary measures to prevent and curtail such

22   misconduct."  (ECF No. 61.)  Plaintiff further alleges that Defendant has ratified this misconduct

23   by failing to take any steps to reprimand or discharge the officers that were allegedly involved in

24   the incident.  (ECF No. 61.)

25                              **STANDARD OF REVIEW**

26         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for

27   failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal

28   can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

                                        2

1    under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699

2    (9th Cir. 1990).  In determining the adequacy of the pleading, the Court must determine whether

3    plaintiff would be entitled to some form of relief if the facts alleged in the complaint were true.

4    *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

5    1978).  However, the court is "not bound to accept as true a legal conclusion couched as a factual

6    allegation."  *Ashcroft*, 556 U.S. at 678 (internal quotations omitted).  Moreover, the factual

7    matter must state a claim to relief that is plausible on its face.  *Id.*  "A claim has facial

8    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9    inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not

10   akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has

11   acted unlawfully."  *Id.*

## ANALYSIS

13        Defendant filed a 12(b)(6) motion contending that Plaintiff's claim should be dismissed

14   because Plaintiff fails to allege sufficient facts to support municipal liability.  (ECF No. 58.)  "To

15   sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was

16   committed by a person acting under color of state law; and (2) that the conduct deprived the

17   plaintiff of a constitutional right."  *Balistreri*, 901 F.2d at 699 (citations omitted).  Under the

18   Supreme Court's decision in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,

19   689–91 (1977), a government entity may be held liable under 42 U.S.C. § 1983, but such liability

20   must be founded upon evidence that the government unit itself supported a violation of

21   constitutional rights and not on the basis of the respondeat superior doctrine or vicarious liability.

22   As such, municipal liability only attaches when execution of a government's policy or custom

23   inflicts the plaintiff's injury.  *Id.* at 694; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v.

24   Brown*, 520 U.S. 397, 403 (1997).  The Ninth Circuit has held that a single incident will not

25   suffice to show a policy.  *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  A plaintiff

26   may demonstrate a policy or custom of a municipality by showing:

27          (1) a longstanding practice or custom which constitutes the standard operating
            procedure of the local government entity;
28          (2) that the decision-making official was, as a matter of state law, a final

3

policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

(3) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citing *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)) (internal quotation marks and citations omitted).

### I.    Long Standing Policy or Practice

In order to succeed, Plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "The custom must be so 'persistent and widespread' that it constitutes a permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Plaintiff's third amended complaint presents three arguments in support of his contention that his constitutional rights were violated pursuant to Defendant's longstanding practice or custom. First, he argues that Defendant has "customs, policies or practices which encouraged, authorized, or condoned false arrests, fabrication of evidence, falsification of police reports and/or other misconduct which foreseeably would result in the violation of rights." (ECF No. 32 at ¶ 32). Although Plaintiff alleges the existence of this custom, he fails to allege any facts that support his contention that the officers' conduct is persistent and widespread enough to constitute a well settled city policy. Instead, Plaintiff has only alleged facts concerning a single incident. Accordingly, the factual allegations do not support an inference that such a policy exists.

Second, Plaintiff contends that Defendant has exhibited deliberate indifference in creating a policy or practice of disregarding the need for "more or different training and/or supervision and/or discipline of its police officers, including, but not limited to, the unknown officers involved in the above described incident." (ECF No. 32 at ¶ 27.) Although the Supreme Court has held that the inadequacy of police training may serve as the basis for § 1983 liability, it has

4

1  done so only where "the failure to train amounts to deliberate indifference to the rights of persons

2  with whom the police come into contact," and the municipality's policies are the "moving force

3  [behind] the constitutional violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89

4  (1989). "This [deliberate indifference] standard is met when 'the need for more or different

5  training is so obvious, and the inadequacy so likely to result in the violation of constitutional

6  rights, that the policymakers of the city can reasonably be said to have been deliberately

7  indifferent to the need.'" *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir.

8  2010) (quoting *Canton*, 489 U.S. at 390).

9         Plaintiff has not pled any facts that support his contention that the City was in need of

10  such training or that it was aware of such a need.  Instead, Plaintiff has alleged only that

11      [t]he incidents described herein were caused by the deliberate indifference of the City
12      of Tracy, and/or other high ranking Police Department officials and/or supervisors,
    with regard to the need for more or different training and/or supervision and/or
    discipline of its police officers, including, but not limited to, the unknown officers
13      involved in the above described incident.

14  (ECF No. 33 at ¶ 27.)  This allegation lacks any factual basis to support it and is thus nothing

15  more than a conclusory statement.  *See Ashcroft*, 556 U.S. at 678 (holding that a complaint that

16  tenders "naked assertions devoid of factual enhancement" cannot survive a motion to dismiss).

17  As such, Plaintiff's complaint fails.

18         Finally, Plaintiff alleges that Defendant has a widespread practice of disregarding its own

19  policy, which is to record certain arrest situations.   (ECF No. 33 at ¶ 23.)   He further argues that

20  the officers' failures to adhere to this policy evidences Defendant's practice of tolerating

21  misconduct.  (ECF No. 32 at ¶¶ 23–27).  As Defendant has recognized, the policy of recording

22  police contacts is not itself unconstitutional.  *See Lanza v. State of N.Y.*, 370 U.S. 139, 143

23  (1962) (holding that "it is obvious that a jail shares none of the attributes of privacy of a home,

24  an automobile, an office, or a hotel room.  In prison, official surveillance has traditionally been

25  the order of the day").  There is no constitutional right to have police contacts recorded, and there

26  are no factual allegations that the lack of recording had any causal relation to the incident.

27  Moreover, this Court finds that Plaintiff's assertion is akin to a respondeat superior liability

28  theory, which has been rejected by the Supreme Court as a basis for municipality liability under

1  28 U.S.C. §1983.  *See Monel*, 436 U.S. at 689.  Thus, Plaintiff's complaint does succeed under

2  this prong.

3  **II.  Final Policy Maker**

4  Plaintiff also fails to support his contentions that a sergeant that was allegedly involved in

5  the incident was acting as a final policy maker in doing so.  In Plaintiff's Opposition, he states

6  that the police sergeant, who allegedly used excessive force and violated Plaintiff's rights, "set in

7  motion a series of acts by others" which directly led to the use of excessive force against

8  Plaintiff.  (ECF No. 61.)  Specifically, Plaintiff argues that the sergeant constitutes a high-ranking

9  official and that his actions promulgated policies that condoned a "Code of Silence" where police

10  officers ignored or failed to report misconduct on behalf of other police officers.  (ECF No. 61).

11  "[A] municipality can be liable for an isolated constitutional violation when the person

12  causing the violation has final policymaking authority."  *Christie*, 176 F.3d at 1235; *see also City*

13  *of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality) (holding that "only those

14  municipal officials who have final policymaking authority may by their actions subject the

15  government to § 1983 liability") (internal quotations omitted).  Plaintiff has not alleged any facts

16  or case law,[2] however, in support of his contention that the sergeant qualifies as a final policy

17  maker, or that the sergeant's actions may fairly be said to represent an official policy.  Thus,

18  Plaintiff's allegations alone do not support a claim for municipality liability.

19  **III.  Ratification**

20  Finally, Plaintiff's allegation—that Defendant is liable because it ratified the alleged

21  conduct by not disciplining the officers that were involved—fails to state a claim because

22  Plaintiff has not alleged any facts to plausibly support his ratification claim.  "To show

23  ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's

24  decision and the basis for it."  *Christie*, 176 F.3d at 1239 (internal quotation omitted).  It requires

25  that municipal policymakers make a deliberate choice to endorse a subordinate's decision and the

26

27         [2]      Whether an official has final policymaking authority is a question for the court to

28  decide based on state law.  *See Christie*, 176 F.3d at 1235; *Jett v. Dallas Indep. Sch. Dist.*, 491
U.S. 701, 737 (1989).

basis for it.  *See Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

In his complaint, Plaintiff alleges that the officers' conduct was ratified because they "were completely exonerated from all allegations of excessive force." (ECF No. 33 at ¶ 22.)  In support of his contention, Plaintiff has submitted a letter that the City of Tracy Chief of Police sent him stating that "no violations of policy or law were found to have been committed" in regard to his complaint. (ECF No. 62, Exhibit 3.)  Additionally, Plaintiff cites *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991), for the proposition that a City can be liable where the Chief of Police ratifies misconduct by signing a letter exonerating the officials.

Although Plaintiff is correct that a knowing ratification may be the basis for liability, he fails to allege sufficient facts to support this liability claim.  Neither the allegations set forth in the complaint, nor the letter provide facts that would support an inference that the City endorsed the alleged conduct or even had knowledge that the conduct in fact occurred.  Instead, the factual matter plausibly suggests that  Defendant did not find evidence of the alleged conduct.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft*, 556 U.S. at 678 (internal quotations omitted).  In *Larez*, there was evidence that the Chief of Police knew of the misconduct and regarded such conduct as acceptable.  *Larez*, 946 F.2d at 635–36.  In contrast, Plaintiff has not alleged facts that would allow such an inference.  Thus, Plaintiff's Third Amended Complaint fails to state a claim that he is entitled to relief from Defendant.

**CONCLUSION**

The Court finds that even taking the alleged facts as true Plaintiff's Third Amended Complaint is devoid of sufficient facts to allege liability against Defendant.  As such, Defendant's Motion to Dismiss is granted.  This Court is cognizant of the fact that Plaintiff has had numerous opportunities to amend his complaint.  In an effort to promote justice, this Court will allow Plaintiff leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (holding that "generally, Rule 15 advises the court that leave shall be freely given when justice so requires") (internal quotations omitted).  However, should Plaintiff file an

amended complaint that does not cure the deficiencies that have been addressed in this order, such complaint will be dismissed with prejudice. *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) (holding that "a district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims").   Accordingly, it is hereby **ADJUDGED** that

      1.  Defendant's Motion to Dismiss the Complaint (ECF No. 58) pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

      2.  Plaintiff may file an amended complaint addressing the deficiencies raised in this Order **on or before June 14, 2013**.  Plaintiff must make clear in this amended complaint the factual allegations supporting the basis on which liability is asserted.

      IT IS SO ORDERED in Chambers at Sacramento, California, this 3rd day of June, 2013.



Troy L. Nunley
United States District Judge