1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11    BRYAN DENMAN,                          No.  2:11-CV-00310-TLN-EFB

12                Plaintiff,

13         v.                                **ORDER**

14    CITY OF TRACY, ET AL.,

15                Defendants.

16

17         This matter is before the Court pursuant to Defendants City of Tracy, Alex Neicu, Jared

18    Trine, Alex Kalinin and Anthony Matuska's (collectively hereinafter referred to as "Defendants")

19    motion for summary judgment.  (ECF No. 73.)  Plaintiff Bryan Denman ("Plaintiff") has filed an

20    opposition (ECF No. 74), and Defendants have replied to Plaintiff's opposition (ECF No. 79).

21    The Court has carefully considered the arguments presented by the parties.  For the reasons set

22    forth below, Defendants' motion for summary judgment (ECF No. 73) is GRANTED IN PART

23    AND DENIED IN PART.

24         **I.      Factual Background**

25         In Plaintiff's Fourth Amended Complaint, he alleges that on or about August 31, 2010, a

26    City of Tracy police officer pulled him over because of a headlight infraction.  (Pl.'s Fourth Am.

27    Compl., ECF No. 68 at ¶ 10.)  Plaintiff consented to a search of his vehicle, during which the

28    officer found a lug nut wrench underneath the driver's seat.  (ECF No. 33 at ¶ 11.)  When asked

1

1    about the wrench, Plaintiff stated that he did not know that it was under the seat because the

2    vehicle belonged to his parents.  (ECF No. 33 at ¶ 11.)  The officer admonished Plaintiff that he

3    was in possession of a deadly weapon and subsequently arrested him on felony possession of a

4    deadly weapon.  (ECF No. 33 at ¶ 11.)

5            Upon arriving at the police station, Plaintiff was kept handcuffed and placed in a chair

6    with his hands behind his back.  (ECF No. 33 at ¶ 13.)  Plaintiff alleges that one of the officers,

7    who was introduced as a sergeant, became enraged by Plaintiff's comments and rushed over to

8    Plaintiff, grabbed him by the neck, and violently threw him to the floor.  (ECF No. 33 at ¶ 14.)

9    During the altercation, Plaintiff struck his head.  (ECF No. 33 at ¶ 14.)  Plaintiff further alleges

10   that several police officers proceeded to hold him down while one officer punched him.  (ECF

11   No. 33 at ¶ 15.)  The officers then wrapped Plaintiff in a restraint device, similar to a strait-jacket,

12   and placed a hood or blindfold device over his head, making it difficult for Plaintiff to breathe or

13   see.  (ECF No. 33 at ¶ 16.)  Plaintiff states that the officers tightened his handcuffs to the point

14   that they caused him extreme pain.  (ECF No. 33 at ¶ 17.)  Plaintiff asserts that after his release,

15   he suffered post-concussive symptoms and was vomiting for two to three days after the beating.

16   (ECF No. 33 at ¶ 19.)  Plaintiff was treated for a concussion, received two CT scans, and is

17   currently seeking treatment from a chiropractor for ongoing back pain.  (ECF No. 33 at ¶ 19.)

18   Additionally, Plaintiff alleges that his wrists, back and legs suffered from bruising and red marks,

19   and that he had a lump on his head and a black eye following the officers' use of force.  (ECF No.

20   33 at ¶ 19.)[1]

21           On June 14, 2013, Plaintiff filed his Fourth Amended Complaint, which includes the

22   following claims for relief: (1) violation of 42 U.S.C. § 1983 against Defendants Alex Neicu,

23   Jared Trine, Alex Kalinin, and Anthony Matuska; (2) negligence against all named Defendants;

24   and (3) battery against all named Defendants.[2]

25   ///

26

27   _____

[1]      Plaintiff's arrest did not result in a criminal trial because the district attorney dropped all criminal charges
against Plaintiff.

28   [2]      Prior to commencing this litigation, Plaintiff presented a timely Tort Claim to the City of Tracy pursuant to
the California Tort Claims Act. Said claim was rejected on November 23, 2010.

## II.     Legal Standard

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288−289 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251−52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

3

1    trial." *First Nat'l Bank*, 391 U.S. at 288−89.  Thus, the "purpose of summary judgment is to

2    'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

3    trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

4    amendments).

5            In resolving the summary judgment motion, the court examines the pleadings, depositions,

6    answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

7    R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982).  The evidence

8    of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

9    facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at

10   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

11   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

12   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

13   Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing

14   party "must do more than simply show that there is some metaphysical doubt as to the material

15   facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

16   trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587

17   (internal quotations omitted).

18          **III.    Analysis**

19          As previously mentioned, Plaintiff's Fourth Amended Complaint alleges: (1) § 1983

20   claims against Defendants Alex Neicu ("Neicu"), Jared Trine ("Trine"), Alex Kalinin ("Kalinin"),

21   and Anthony Matuska ("Matuska");[3] negligence against all Defendants; and battery against all

22   Defendants.  (*See* ECF No. 68 at ¶¶ 22–39.)  The Court addresses each of Defendants arguments

23   for summary judgment separately below.

24          A.  Plaintiff's § 1983 Claim

25          Plaintiff first alleges that Defendant Trine unlawfully arrested Plaintiff in violation of his

26   Fourth Amendment right to be free of unlawful seizure.  Second, Plaintiff alleges that his Fourth

---

27   [3]        Defendants Neicu, Trine, Kalinin and Matuska are, and at all relevant times mentioned herein were, police
     officers with the Tracy Police Department and acting under color of law.  Defendants Neicu, Trine, Kalinin and
28   Matuska are sued in their individual and official capacities.  (ECF No. 68 at ¶ 6–9.)

1    Amendment rights were violated when Defendants Neicu, Trine, Kalinin, and Matuska used

2    excessive force in subduing Plaintiff at the police station.

3                    *a.  Unlawful Arrest*

4            Defendants present numerous arguments as to why Plaintiff's arrest did not violate the

5    Fourth Amendment.  First, Defendants argue that the arrest was supported by ample probable

6    cause.  (ECF No. 73 at 12.)  In opposition,[4] Plaintiff presents the Superior Court of San Joaquin's

7    October 24, 2012, ruling in which the court found that Plaintiff's arrest was unlawful.  (ECF No.

8    77 at 20.)  The superior court based its finding on the fact that no statute prohibits a person from

9    carrying a tire iron in a vehicle and furthermore that a tire iron is not included in the enumerated

10   list of weapons that may not be possessed pursuant to California Penal Code § 12020.[5]  (ECF No.

11   77 at 18–19.)  The court reasoned that although a tire iron may be used in a way that would make it

12   a deadly weapon, the facts in this case did not support such a belief for the following reasons: Plaintiff

13   was pulled over for a headlight violation; Plaintiff consented to a search of the car; Plaintiff

14   cooperated during the search; Plaintiff was seated on the curb away from the vehicle during the

15   search; the tire iron was sitting in the car with a lug nut; when asked about the tire iron Plaintiff stated

16   that he did not know about its existence but that his father had been driving the car; and the officer

17   corroborated that the vehicle was registered to Plaintiff's father, etc.  (ECF No. 77 at 18–19.)

18   Although this Court is not bound by the Superior Court's finding that the arrest was unlawful, it

19   agrees with its analysis.  *See Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002)

20   *opinion amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003) ("Probable cause exists when

21   'under the totality of circumstances known to the arresting officers, a prudent person would have

22   concluded that there was a fair probability that [the defendant] had committed a crime.'")

23   Therefore, the Court declines Defendants' invitation to find that Defendant Trine reasonably believed

24   

25   _____
     [4]      Plaintiff asks this Court to take judicial notice of the Superior Court of San Joaquin's October 24, 2012
     ruling in Plaintiff's criminal case pursuant to Federal Rule of Civil Procedure 201.  (ECF No. 77.)  Rule 201 requires

26   the Court to take judicial notice if a party requests it and the Court is supplied with the necessary information
     showing that the fact can be accurately and readily determined from sources whose accuracy cannot reasonably be

27   questioned.  Plaintiff has provided the Court with a certified copy of the Superior Court's transcript and thus
     Plaintiff's request is GRANTED.
     [5]      Defendants requested that this Court take Judicial Notice of California Penal Code § 12020.  (ECF No. 73-

28   2.)  Defendants' request is hereby GRANTED.

1    that he had probable cause to arrest Plaintiff.

2                        *b.   Excessive Force*

3           Defendants contend that Plaintiff's excessive force claim fails because Defendants acted

4    reasonably and therefore a constitutional violation did not occur.  Additionally Defendant

5    contends they are owed qualified immunity.  (ECF No. 73 at 16–18.)  Both arguments turn on

6    whether Defendants' actions were objectively reasonable.  *Graham v. Connor*, 490 U.S. 386, 396

7    (1989) ("The "reasonableness" of a particular use of force must be judged from the perspective of

8    a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Hope v.*

9    *Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established [for

10   purposes of qualified immunity], its contours must be sufficiently clear that a reasonable official

11   would understand that what he is doing violates that right.") (internal quotations excluded).

12          In the context of evaluating an excessive force claim, the reasonableness of the officer's

13   conduct depends on: 1) the type and amount of force used; 2) whether the suspect posed a threat;

14   and 3) whether the suspect was resisting.  *Espinosa v. City and County of San Francisco*, 598

15   F.3d 528, 537 (9th Cir. 2010).  The parties dispute whether Plaintiff was acting in a threatening

16   way and whether he in fact resisted Defendants' attempts to subdue him.  (*See* Denman Depo.,

17   ECF No. 73-1 at 25:08–32:16; Neicu Depo., ECF No. 73-1 at 95:25–96:17, 97:12–99:24, 102:13–

18   103:06.)  Accordingly, to make a determination as to whether Defendants' actions were

19   reasonable would require this Court to make a credibility determination, which is the province of

20   the jury, not the Court.  *Anderson*, 477 U.S. at 249 (1986) ("it is clear enough from our recent

21   cases that at the summary judgment stage the judge's function is not himself to weigh the

22   evidence and determine the truth of the matter but to determine whether there is a genuine issue

23   for trial.").  The Ninth Circuit has echoed this principle as applied to excessive force cases:

24              Determining whether a police officer's use of force was reasonable
                or excessive therefore "requires careful attention to the facts and
25              circumstances of each particular case" and a "careful balancing" of
                an individual's liberty with the government's interest in the
26              application of force. [*Graham v. Connor*, 490 U.S. 386, 396
                (1989)]; *see Deorle v. Rutherford*, 272 F.3d 1272, 1279–81 (9th
27              Cir. 2001).  Because such balancing nearly always requires a jury to
                sift through disputed factual contentions, and to draw inferences
28              therefrom, we have held on many occasions that summary

judgment or judgment as a matter of law in excessive force cases should be granted sparingly. *See, e.g.*, *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (citing several cases). This is because police misconduct cases almost always turn on a jury's credibility determinations.

*Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  As such, the Court finds that granting Defendants' summary judgment motion as to this claim would be inappropriate.

   *c. Qualified Immunity*

   "Qualified immunity balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine of qualified immunity insulates government officials[6] from civil damages in § 1983 litigation "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is an affirmative defense; the burden of pleading it rests with the defendant. *Crawford-El v. Britton*, 523 U.S. 574, 586–87 (1998) (citing *Gomez v. Toledo*, 446 U.S. 635, 639−41 (1980)).

   The determination of qualified immunity requires a two-step test: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established. *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).  In deciding the second prong, the Court considers whether the contours of the right were sufficiently clear at the time that the action occurred so that a "reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The Supreme Court has referred to decisions of the Court of Appeals when

---

[6] Qualified immunity protects only individuals, not municipalities or other governmental entities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993).  Because defendants who are sued in their official capacity stand in the same shoes as the entity itself, qualified immunity does not apply. *See, e.g.*, *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) ("A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983." (citing *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985))).

1   inquiring whether a right is clearly established.  *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th

2   Cir. 2004); *Forsyth*, 472 U.S. at 533; *Davis v. Scherer*, 468 U.S. 183, 191−192 (1984).  "For a

3   constitutional right to be clearly established, its contours 'must be sufficiently clear that a

4   reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*,

5   536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640).   Thus, the Court makes a

6   decision as to the reasonableness of an officer's understanding based on the applicable law.  *See*

7   *id.*; *Boyd*, 374 F.3d at 781.   "However, a victim's constitutional rights may be clearly established

8   in the absence of a case 'on all fours prohibiting [the] particular manifestation of unconstitutional

9   conduct [at issue].'"  *Boyd*, 374 F.3d at 781 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286

10  (9th Cir. 2001)).  Where an officer's conduct "is so patently violative of the constitutional right

11  that reasonable officials would know without guidance from the courts that the action was

12  unconstitutional, closely analogous pre-existing case law is not required to show that the law is

13  clearly established."  *Id.* (quoting *Deorle*, 272 F.3d at 1286) (internal quotation marks omitted).

14  The Court decides in its discretion whether to address the first or second prong first.  *See*

15  *Pearson*, 555 U.S. at 237.  However, if the Court initially addresses the first prong and finds that

16  no constitutional right was violated under the alleged facts, the inquiry ends and defendants

17  prevail.  *Saucier*, 533 U.S. at 201.

18        As referenced in the above excessive force analysis, there is a factual dispute concerning

19  the events on which Plaintiff's claim is predicated.  Accordingly, to make a finding as to whether

20  a constitutional violation occurred would require this Court to make a credibility determination

21  which at this juncture would be improper.  *See Anderson*, 477 U.S. at 249.  Accordingly, the

22  Court addresses the second prong, whether the constitutional right was clearly defined.

23        Under *Saucier*, Defendants contend that there is no clearly established law prohibiting an

24  officer's use of force to restrain a resisting arrestee.  (ECF No. 73 at 20–21.)  Defendants contend

25  that the totality of the circumstance warranted the force and that "Plaintiff admittedly was moving

26  his legs, arms and hands about and repeating profanities and insults at the officers and expressing

27  his anger about the situation."  (ECF No. 73 at 20.)

28        First, the Court notes that Defendants' characterization of Plaintiff's statement misstates

8

1   the deposition testimony that Defendants have provided to the Court.  When asked about the

2   officer's takedown, Plaintiff stated he hit his head and "went black for a minute, then woke up."

3   (ECF No. 73-1 at 31:03–13.)  Plaintiff also stated that he did not kick at the officers, but did kick

4   a chair out from underneath his legs as he was falling on it.  (ECF No. 73-1 at 33:09–11.)

5   Furthermore, Plaintiff denied resisting arrest and stated that he was compliant with the officers'

6   orders.  (ECF No. 73-1 at 34:19–35:01.)   As Plaintiff is the non-moving party, Plaintiff's sworn

7   statement is to be believed, and all reasonable inferences that may be drawn from his testimony

8   must be drawn in Plaintiff's favor.  *Anderson*, 477 U.S. at 255.  Although Plaintiff fails to provide

9   the Court with a case that clearly states that Defendants' alleged behavior is unconstitutional, the

10   Court finds that if Plaintiff's statements are true, the alleged use of force would have been so

11   patently violative of Plaintiff's constitutional rights that reasonable police officers would be

12   aware that this conduct is unconstitutional.  *See Boyd*, 374 F.3d at 781.  Accordingly, Defendants

13   cannot meet their burden to establish qualified immunity at this juncture.

14        B.  Plaintiff's Tort Claims

15        Defendants assert that they are immune from liability concerning Plaintiff's negligence

16   and battery claims pursuant to California Government Code §§ 815.2, 820.2, and 820.8.  (ECF

17   No. 73 at 24–26.)  In Plaintiff's opposition, Plaintiff fails to address the applicability of these

18   statutes to his tort claims and instead argues that Defendants' motions should be denied because

19   Defendants' use of force was unreasonable.  (ECF No. 74 at 21.)  Although Plaintiff's arguments

20   would be relevant under a qualified immunity argument, Plaintiff fails to inform the Court as to

21   its applicability to California's Governmental Claims Act.[7]

22        The Government Claims Act abolished all common law or judicially declared forms of

23   liability for public entities except for such liability as might be required by the federal or state

24   constitution.  35A Cal. Jur. 3d Government Tort Liability § 2.  Accordingly, in the absence of

25   some constitutional requirement, public entities may be liable only if a statute declares them

26   liable.  Section 820.2 provides: "[e]xcept as otherwise provided by statute, a public employee is

27   not liable for an injury resulting from his act or omission where the act or omission was the result

28   ---

   [7]    The Governmental Claims Act incorporates Gov. Code, §§ 810 to 998.3.

of the exercise of the discretion vested in him, whether or not such discretion be abused."  Section 815.2(b) states "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Plaintiff has failed to provide this Court with any case law in support of its position that Plaintiff's tort claims survive Defendants' immunity claim.  Moreover, Plaintiff's argument as to the reasonableness of Defendants' actions does not seem to matter in light of the statute's language affording immunity even when an employee's action constitutes an abuse of discretion.  As such, Defendants' motion for summary judgment as to Plaintiff's tort claims is GRANTED.

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 73) is GRANTED IN PART and DENIED IN PART.  It is hereby ORDERED that:

1. Defendants' motion for summary judgment as to Plaintiff's § 1983 claims is DENIED; and

2. Defendants' motion for summary judgment as to Plaintiff's negligence and battery claims is GRANTED.

Dated: June 12, 2014

_____
Troy L. Nunley
United States District Judge